```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division


THE INFORMATICS APPLICATIONS    )
GROUP, INC.,                    )
                                )
     Plaintiff,                 )
                                )    1:11cv726 (JCC/JFA)
          v.                    )
                                )
MARK B. SHKOLNIKOV, et al.,     )
                                )
     Defendants.                )
```

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss [Dkt. 9] (the "Motion"). For the following reasons, the Court will grant Defendants' Motion.

### I. Background

Plaintiff The Informatics Applications Group, Inc. (the "Plaintiff" or "TIAG") brings this case against its former employee, Defendant Mark Shkolnikov, and his company, Defendant KEYnetik, Inc., (collectively, the "Defendants") alleging that Shkolnikov breached certain employment agreements entered into with TIAG.

   A.   Factual Background

TIAG develops and delivers information technology services and products to the federal government and the private sector. (Complaint [Dkt. 1] ("Compl.") ¶ 1.) Shkolnikov was

1

employed by TIAG from March 1, 2002 until his employment was terminated on March 17, 2010.  (Compl. ¶ 11.)  He initially worked for TIAG as an independent contractor pursuant to an independent contractor agreement executed on February 25, 2002.  (Compl. ¶ 12, Ex. 1.)  On May 1, 2003, Shkolnikov became a TIAG employee, and assumed the positions of Chief Technology Officer and Senior Systems Engineer.  (Compl. ¶ 13.)

Shkolnikov's employment at TIAG was governed by an employment agreement (the "Employment Agreement") executed on May 1, 2003.  (Compl. ¶ 13, Ex. 2.)  In connection with the Employment Agreement, Shkolnikov also executed a document titled "Assignment of Inventions, Non-Disclosure, and Non-Competition Agreement" (the "Assignment Agreement").  (Compl. ¶ 14, Ex. 3.)

Defendant's duties at TIAG focused on research and development, particularly with respect to hand-held computing devices.  (Compl. ¶¶ 15, 18-20.)  While employed at TIAG, Shkolnikov reported to Fred Goeringer, TIAG's co-founder, managing principal, and Chief Information Officer.  (Compl. ¶ 16.)

The Assignment Agreement signed by Shkolnikov provided that:

> If at any time during his[] employment, Employee shall (alone or with others) make, conceive, create, discover, invent or reduce to practice any invention, modification, discovery, design, development, improvement, process, software program, work of

2

>authorship, documentation, formula, data, technique, know-how, trade secret, or intellectual property right whatsoever or any interest therein . . . that (i) relates to the Company's business, or that relates to the business of customers or suppliers of the Company and to activities undertaken by the Company on behalf of such customers or suppliers, or relates to any products or services being developed manufactured or sold by the Company, (ii) results from tasks assigned to Employee by the Company or (iii) results from the use of premises, equipment or property (tangible or intangible) owned, leased, or contracted for by the Company ("**Company Developments**"), such Company Developments and the benefits thereof are and shall immediately become the sole and exclusive property of the Company and its assigns, as works made for hire.

(Compl. Ex. 3 at 2.)  Shkolnikov also agreed to "promptly disclose" each Company Development to TIAG and to "take all steps necessary" to ensure TIAG's ownership of those developments.  (*Id.*)

In signing the Assignment Agreement, Shkolnikov assigned "all rights, title, and interest (including, but not limited to, all patent rights, copyrights, and trademarks) in and to the Company Developments and all benefits and/or rights resulting therefrom to the Company and its assigns without further compensation" and agreed to "communicate to the Company, without cost or delay, and without disclosure to any third party, all available information relating to the Company Developments."  (*Id.*)

TIAG acknowledged in the Assignment Agreement that Shkolnikov had, prior to his employment, created "Developments" and could, during and after the period of his employment, create additional Developments.  (Compl. Ex. 3 at 3.)  The parties agreed that such Developments would only be deemed Company Developments subject to the Assignment Agreement if created by Shkolnikov in the course of performing his duties as a TIAG employee.  (*Id.*)  TIAG guaranteed that it would never claim any rights to any Developments "(A) done before the Company and the Employee entered into this agreement, (B) any Employee Developments subsequent or otherwise related to these existing Developments, and (C) any other Employee Developments conceived and created outside of the scope of his services as an employee of the Company."[1]  (*Id.*)

On July 22, 2004, while an employee of TIAG, Shkolnikov filed U.S. Patent Application Serial No. 10/895,967, which, on February 21, 2006, issued as U.S. Patent No. 7,002,553 (the "'553 Patent").  (Compl. ¶ 27.)  The '553 Patent is entitled "Active Keyboard System for Handheld Electronic Devices" and names Shkolnikov the sole inventor.  (*Id.*)  Goeringer helped develop the technologies disclosed and claimed

---

[1] Although TIAG does not cite this provision of the Assignment Agreement in its Complaint, the Court may consider the document as a whole, given that it is included as an exhibit to the Complaint.  *See Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

in the '553 Patent, but is not listed as an inventor. (Compl. ¶ 35.) The '553 Patent states that it is a "[c]ontinuation in part of application No. 10/320,529, filed on Dec. 17, 2002, now Pat. No. 6,947,028." (Compl. Ex. 4 at 1.)

On November 15, 2005, Shkolnikov formed KEYnetik, Inc., a Virginia corporation with its principal place of business in Virginia. (Compl. ¶¶ 3, 36.) KEYnetik is a privately held corporation, in which Shkolnikov and Yevgeniy Shkolnikov, a non-party, are equity holders. (Compl. ¶ 37.)

After forming KEYnetik and while employed at TIAG, Shkolnikov filed four other patent applications, which name Shkolnikov as inventor (in one instance with Yevgeniy Shkolnikov as co-inventor) and KEYnetik as assignee. (Compl. ¶¶ 28-31.) These patent applications, and the '553 Patent, involved technology developed by Shkolnikov and others during the course of Shkolnikov's employment at TIAG. (Compl. ¶ 33.) TIAG alleges that these developments are its property under the terms of Shkolnikov's Assignment Agreement. (Compl. ¶ 34.)

B. Procedural Background

TIAG filed suit against Defendants on July 8, 2011. The Complaint includes one federal claim, Count II, for correction of inventorship under 35 U.S.C. § 256 with respect to the '553 Patent. The remainder of TIAG's claims arise under state law, and include (1) Count I, breach of contract,

(2) Count III, conversion, (3) Count IV, misappropriation of trade secrets, (4) Count V, breach of fiduciary duty, and (5) Count VI fraud.[2] On September 6, 2011, Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' Motion is before the Court.

## II. Standard of Review

### A. Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Defendants may attack subject matter jurisdiction in one of two ways. First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002). In such instances, all facts alleged in the complaint are presumed to be true. *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been

---

[2] TIAG's fraud claim is mislabeled as a second "Count V" in the Complaint.

submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Velasco v. Gov't of Indonesia,* 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (citations omitted).

In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.,* 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

B.   Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.*

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) analysis. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest

8

an entitlement to relief." *Id.* at 1950–51.  The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1949.  In other words, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### III. Analysis

Defendants argue that the Complaint must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Memorandum in Support ("Mem.") at 7-8.)  According to Defendants, TIAG lacks standing to assert a claim for correction of inventorship under 35 U.S.C. § 256 because it seeks to have a non-party, Fred Goeringer, named an inventor of the '553 Patent, and may not pursue such a claim in his absence, on his behalf. (Mem. at 8.)  Defendants contend that if the Court dismisses the Section 256 claim for lack of subject matter jurisdiction, the state law claims must also be dismissed.  (Mem. at 8.)

A.   Count II: Correction of Inventorship

"A person who alleges that he is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to correct inventorship in a district court under 35 U.S.C. § 256." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n.1 (Fed. Cir.

9

2004) (citation omitted).  Section 256 permits correction of inventorship "[w]henever . . . through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part . . . ."  35 U.S.C. § 256.  "The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner [of the United States Patent and Trademark Office] shall issue a certificate accordingly."  *Id.*

A party must satisfy constitutional standing requirements in order to invoke Section 256.  *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed. Cir. 2001).  That is, the party must demonstrate that he has "suffered an injury-in-fact, that the injury is traceable to the conduct complained of and that the injury is redressable by a favorable decision."  *Id.* (citing U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  To have standing to state a Section 256 claim, a party must assert either expected ownership rights in the patent at issue or a "concrete financial interest in the patent, albeit an interest less than ownership."[3]  *Chou*, 254 F.3d at 1358-59.

---

[3] In *dicta*, the *Chou* court commented that it was "not implausible" that a "reputational interest alone is enough to satisfy the requirements of Article III standing," but declined to decide the issue as the plaintiff had alleged a concrete financial interest in the patent. *Chou*, 254 F.3d at 1359.  TIAG has not argued that it has standing to assert its Section 256 claim on the basis of reputational harm.

10

Defendants contend that TIAG lacks standing to assert such a claim. They argue that Goeringer is not a party in this case, and there is no basis for TIAG pursuing a Section 256 claim, in his absence, on his behalf.[4] The crux of the Complaint is that TIAG was deprived of an ownership interest in the '553 Patent, which was subject to Shkolnikov's Assignment Agreement. This injury allegedly arose, however, by virtue of Shkolnikov breaching his employment agreements and other duties owed to TIAG. What is not clear is how the exclusion of Goeringer as an inventor of the '553 Patent injured TIAG, or how adding Goeringer as an inventor will provide a remedy. Because standing is evaluated on a claim by claim basis, it is this inquiry which is critical to TIAG's Section 256 claim.

Whether an employer has standing to assert a Section 256 claim and have its employee named an inventor of a patent often turns on whether the employee has assigned his putative ownership rights in the patent to the employer. *See Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2009 WL 464338, at *11 (N.D. Ill. Feb. 23, 2009) (finding that employer had standing where the complaint alleged that employee-inventors had assigned their patent rights to employer); *see also Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-Civ., 2008 WL 5746938, at *10 (S.D. Fla. Nov. 10, 2008) (concluding that defendant lacked

---

[4] Much of TIAG's response, and the authority it cites, miss the mark, addressing Section 256's notice requirement rather than standing. (Opp. at 3-4.)

11

standing to assert Section 256 counterclaim on behalf of non-party where no defendant was a putative inventor and the non-party had not assigned his ownership rights in the patent to defendant at the time of filing), *aff'd* 2008 WL 5750019 (S.D. Fla. Dec. 18, 2008). Where an employee has assigned his patent rights to his employer, it is clear that the omission of the employee from the patent injured the employer by depriving it of an ownership interest or financial stake in the patent, and that the injury will be redressed by correction of inventorship. Here, TIAG does not allege that Goeringer assigned his putative ownership rights in the '553 Patent to TIAG. Indeed, during oral argument, TIAG's counsel stated that he was not aware of any such arrangement.

In *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326-27 (Fed. Cir. 2009), cited by Defendants, the Federal Circuit held that the plaintiff lacked standing where it was undisputed that he had assigned title in the disputed patents to the defendant. Thus, adding the plaintiff as an inventor of the patents would not have provided him with an ownership interest. *Id.* The plaintiff also stood to reap no financial benefit from a correction of inventorship. *Id.* Here, TIAG is not precluded from acquiring patent rights in the same manner as the plaintiff in *Larson*. Still, the lack of an assignment agreement between TIAG and Goeringer means that naming Goeringer as an inventor of

12

the '553 Patent would not cause ownership rights to flow to TIAG.  TIAG also fails to explain how it would otherwise receive financial benefits from the addition of Goeringer as an inventor of the patent.

TIAG has failed to demonstrate how Goeringer's omission from the '553 patent caused it injury, or how adding him as an inventor would provide it redress.  For these reasons, the Court concludes that TIAG has failed to establish standing to pursue a Section 256 claim.  Accordingly, the Section 256 claim is dismissed without prejudice.  TIAG is given leave to file an amended complaint that pleads sufficient facts to support standing.

Having dismissed the Section 256 claim for lack of standing, the Court need not decide whether TIAG has failed to state a claim under Rule 12(b)(6).  The Court notes, however, that TIAG has failed to allege one element of its Section 256 claim -- namely that Goeringer (*i.e.*, the inventor omitted from the '553 Patent) acted without deceptive intent.[5]  *See Stark v. Adv. Magnetics, Inc.*, 119 F.3d 1551, 1556 (Fed. Cir. 1997).  Instead, TIAG alleged that Shkolnikov (*i.e.*, the named inventor) acted without deceptive intent.  (Compl. ¶ 62.)   This allegation is unnecessary, as "Section 256 merely precludes any deceptive intention in the inventor that seeks to be restored to

---

[5] TIAG's counsel acknowledged this deficiency during oral argument, and suggested that it would correct the error in an amended complaint.

a rightful place in the patent."[6]  *Stark*, 119 F.3d at 1556; *see also Univ. of W. Va. Bd. of Trustees v. Van Voorhies*, 84 F. Supp. 2d 759, 773 (N.D. W. Va. 2000).

      B.   <u>State Law Claims</u>

      TIAG asserts a number of state law claims in addition to the Section 256 claim.  Because diversity jurisdiction is absent here, the only avenue for the Court to hear these claims is to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Having dismissed the jurisdiction-conferring Section 256 claim for want of standing, the Court also dismisses TIAG's state law claims.  *See Int'l Primate Protection League v. Inst. for Behavioral Research, Inc.*, 799 F.2d 934, 940-41 (4th Cir. 1986) (citations omitted); *see also Larson*, 569 F.3d at 1325-26 (citations omitted).  The state law claims are dismissed without prejudice.

---

[6] It is also questionable whether TIAG's factual allegations supporting its Section 256 claim meet even the liberal pleading standards of Rule 8.  TIAG fails to allege facts describing how Shkolnikov and Goeringer collaborated or how Goeringer contributed to the '553 Patent.  Rather, TIAG offers the bald assertion that "Goeringer at tiag helped to conceive of and develop the technologies disclosed and claimed in [the '553 Patent] and thus is a co-inventor thereof."  (Compl. ¶ 35.)  "[A] complaint [will not] suffice if it tenders naked assertions devoid of 'further factual enhancements.'"  *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks and alteration omitted).  TIAG likewise neglects to allege facts demonstrating that KEYnetik is implicated in its Section 256 claim.

14

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss.

An appropriate Order will issue.

                                                            /s/

October 11, 2011                    James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE