**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

|  |  |
|---|---|
| THE INFORMATICS APPLICATIONS GROUP, INC., <br><br>         Plaintiff, <br><br> v. <br><br> MARK B. SHKOLNIKOV and KEYNETIK, INC., <br><br>         Defendants. | Case No. 1:11-cv-726 (JCC/JFA) |

## DEFENDANTS' ANSWER AND COUNTERCLAIMS

Defendants Mark B. Shkolnikov and KEYnetik, Inc. ("Defendants") hereby answer the Amended Complaint filed by Plaintiff The Informatics Applications Group, Inc.'s ("tiag"), and further assert counterclaims as follows:

## NATURE OF ACTION

Plaintiff includes the section entitled, "Nature of Action" in violation of Rule 10(b) of the Federal Rules of Civil Procedure. Moreover, the section contains numerous conclusions of law to which no response is required. To the extent an answer is required, Defendants admit that Mr. Shkolnikov is a former employee of Plaintiff tiag, and that he held the titles of Senior Systems Engineer and Chief Technology Officer during his employment by tiag. Defendants further admit that Fred Goeringer is a co-founder and in the past has been a Managing Principal of tiag. Defendants also admit that KEYnetik is a privately owned company. Finally, Defendants admit that Mr. Goeringer was not listed as a co-inventor of the "first patent" referenced in the first sentence of the third paragraph of the Nature of Action, that tiag was not listed as the assignee of

any of the referenced patent applications, and that KEYnetik was listed as the assignee of the "recent patent applications" referenced in the second sentence of the third paragraph of the Nature of Action.  Defendants deny the remaining "allegations" of the Nature of Action.

## THE PARTIES

1.      Admit that tiag has been a Virginia corporation and has had its headquarters and principal place of business at the address indicated.  As to the remainder, denied.

2.      Admit.

3.      Admit.

4.      Admit that Mr. Shkolnikov is a shareholder of KEYnetik.  As to the remainder, denied.

## JURISDICTION AND VENUE

5.      Defendants repeat and incorporate each prior answer as if fully set forth herein, except to the extent they are inconsistent herewith.

6.      Deny to the extent Defendants believe that Plaintiff does not have standing to pursue its claim in Count II as reflected in Defendants' Motion to Dismiss the Amended Complaint.

7.      Defendants admit that, to the extent this Court has jurisdiction to hear the federal claim asserted in the Amended Complaint, the Court may exercise supplemental jurisdiction over the state-law claims.

8.      Admit.

9.      Admit.

10.     Admit.

## FACTS

11.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11, and therefore deny them.

12.     Admit.

13.     Admit.

14.     Admit that Mr. Shkolnikov became a tiag employee on May 1, 2003, that he was given the titles referred to, and that he entered into the Agreement attached as Exhibit 2 to the Amended Complaint.  As to the remainder, denied.

15.     Admit.

16.     Deny.

17.     Admit the allegations of the first three sentences of Paragraph 17, and deny allegation in last sentence of Paragraph 17 that TMIP had a primary focus on use of handheld devices.  As to any remainder, denied.

18.     Admit the first sentence of Paragraph 18.  Deny the last sentence of Paragraph 18. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of Paragraph 18, and therefore deny them.

19.     Deny.

20.     Admit areas (1) and (4) and deny areas (2) and (3) as defined by tiag.  Deny any remainder.

21.     Deny.

22.     Deny.

23.     Deny.

24.     Admit that the "Freehand Presentation," which, as indicated explicitly on its face, was prepared and copyrighted by Mr. Shkolnikov.  Admit that some aspects of the Freehand Presentation also appear in the '553 Patent.  As to the remainder, denied.

25.     With respect to the allegations of Paragraph 25, the referenced Letter Contract speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Letter Contract says what it says.  As to the remainder, denied.

26.     With respect to the allegations of Paragraph 26, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.

27.     With respect to the allegations of Paragraph 27, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.

28.     With respect to the allegations of Paragraph 28, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.

29.     With respect to the allegations of Paragraph 29, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.

30.     With respect to the allegations of Paragraph 30, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.

31.     With respect to the allegations of Paragraph 31, the referenced Assignment Agreement speaks for itself.   To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.   As to the remainder, denied.

32.     With respect to the allegations of Paragraph 32, the referenced Assignment Agreement speaks for itself.   To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.   As to the remainder, denied.

33.     With respect to the allegations of Paragraph 33, the referenced Assignment Agreement speaks for itself.   To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.   As to the remainder, denied.

34.     Paragraph 34 states conclusions of law to which no response is required.   To the extent an answer is required, the allegations in Paragraph 34 are denied.

35.     Paragraph 35 states conclusions of law to which no response is required.   To the extent an answer is required, the allegations in Paragraph 35 are denied.

36.     Deny.

37.     Admit that, on July 22, 2004, Mr. Shkolnikov filed U.S. Patent Application Serial No. 10/895,967, which issued as U.S. Patent No. 7,002,553 on February 21, 2006 and is entitled, "Active Keyboard System for Handheld Electronic Devices."   Admit that Mr. Shkolnikov is named as the sole inventor of U.S. Patent No. 7,002,553 and that this patent is a "continuation-in-part" of an earlier patent granted to Mr. Shkolnikov.   As to the remainder, denied.

38.     Deny.

39.     Admit that, on April 11, 2008, Mr. Shkolnikov filed U.S. Patent Application Serial No. 12/101,578, entitled, "Force Sensing Apparatus and Method to Determine the Radius of Rotation of a Moving Object," based on U.S. Provisional Patent Applications Nos. 60/911,745

5

and 61/027,118, filed April 13, 2007 and February 8, 2008 respectively. Admit that the application names Mr. Shkolnikov as the sole inventor and assigns rights in and to the application to KEYnetik. Admit that the application issued as U.S. Patent No. 7,966,146 on June 21, 2011, identifying KEYnetik as the assignee. As to the remainder, denied.

40.     Admit that, on January 5, 2009, Mr. Shkolnikov filed U.S. Patent Application Serial No. 12/348,698, entitled, "Split Qwerty Keyboard with Reduced Number of Keys," based on U.S. Provisional Patent Application No. 61/019,316, filed January 7, 2008. Admit that the application names Mr. Shkolnikov as the sole inventor and assigns the rights in and to the application to KEYnetik. As to the remainder, denied.

41.     Admit that, on July 6, 2009, Mr. Shkolnikov filed U.S. Patent Application Serial No. 12/498,111 entitled "Spatially Aware Inference Logic," based on U.S. Provisional Patent Application Nos. 61/078,638 and 61/113,738, filed July 7, 2008 and November 12, 2008, respectively. Admit that the application named Mr. Shkolnikov and Yevgeniy Shkolnikov as inventors, and assigned the rights in and to the application to KEYnetik. As to the remainder, denied.

42.     Admit that, on July 10, 2009, Mr. Shkolnikov filed U.S. Patent Application Serial No. 12/500,640, entitled "Handheld Electronic Apparatus with Multiple Input Devices," based on U.S. Provisional Patent Application No. 61/079,996, filed July 11, 2008. Admit that the application named Mr. Shkolnikov as the sole inventor and assigned the rights in and to the application to KEYnetik. As to the remainder, denied.

43.     Deny that foreign applications were filed as to all of the patents and any patent applications identified in paragraphs 37-42.

44.     Admit that the referenced patents and patent applications have not been amended to reflect any ownership by tiag, as there is no basis or reason for doing so.  As to the remainder, denied.

45.     Paragraph 45 states conclusions of law to which no response is required.  To the extent an answer is required, the allegations in Paragraph 45 are denied.

46.     Admit that Mr. Shkolnikov formed KEYnetik, Inc. on November 15, 2005 as a Virginia corporation.  As to the remainder, denied.

47.     Admit that KEYnetik is a privately held corporation and that Mr. Shkolnikov and Yevgeniy Shkolnikov are among its equity holders.  As to the remainder, denied.

48.     Deny.

49.     Deny.

50.     Admit that KEYnetik has used some of the material contained in the patents and applications in its business.  Deny that KEYnetik has used any of the referenced patents and patent applications in connection with any "medical/life science handheld device."  As to the remainder, denied.

51.     Admit that KEYnetik has pursued certain technologies to varying degrees, including "Rock-N-Scroll," "Hi-N-Bye," and "Shake-N-Break," but deny that any such technologies are based on technologies belonging to tiag or otherwise proprietary to tiag.  The remaining allegations in Paragraph 51 are denied.

52.     Deny.

53.     Paragraph 53 states conclusions of law to which no response is required.  To the extent an answer is required, the allegations in Paragraph 53 are denied.

54. Admit that Defendants have made no payments to tiag in connection with "sales of KEYnetik products based on the technologies at issue" and deny the remaining allegations of Paragraph 54.

55. Deny.

## COUNT I

56. Defendants repeat and incorporate each prior answer as if fully set forth herein, except to the extent they are inconsistent herewith.

57. Paragraph 57 states conclusions of law to which no response is required. To the extent an answer is required, the allegations in Paragraph 57 are denied.

58. Deny.

59. Deny.

60. Deny. The allegations in Paragraph 60 are further denied to the extent that they purport to assert claims with regard to the '553 Patent and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

61. Deny. The allegations in Paragraph 61 are further denied to the extent that they purport to assert claims with regard to the '553 Patent and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

62. Deny. The allegations in Paragraph 62 are further denied to the extent that they purport to assert claims with regard to the '553 Patent and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

63. Deny. The allegations in Paragraph 63 are further denied to the extent that they purport to assert claims with regard to the '553 Patent and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

64.     Deny.  The allegations in Paragraph 64 are further denied to the extent that they purport to assert claims with regard to the '553 Patent and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

65.     Deny.  The allegations in Paragraph 65 are further denied to the extent that they purport to assert claims with regard to the '553 Patent and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

66.     Deny.  The allegations in Paragraph 66 are further denied to the extent that they purport to assert claims against KEYnetik, or with regard to the '553 Patent and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

67.     Deny.  The allegations in Paragraph 67 are further denied to the extent that they purport to assert claims against KEYnetik, or with regard to the '553 Patent and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

68.     Deny.  The allegations in Paragraph 68 are further denied to the extent that they purport to assert claims against KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

69.     Paragraph 69 states conclusions of law to which no response is required.  To the extent an answer is required, the allegations in Paragraph 69 are denied.

70.     Paragraph 70 states conclusions of law to which no response is required.  To the extent an answer is required, the allegations in Paragraph 70 are denied.  The allegations in Paragraph 70 are further denied to the extent that they purport to assert claims against KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

## **COUNT II**

71.     Defendants repeat and incorporate each prior answer as if fully set forth herein, except to the extent they are inconsistent herewith.

72.     Paragraph 72 states conclusions of law to which no response is required.  To the extent an answer is required, the allegations in Paragraph 72 are denied.

73.     Admit.

74.     Deny.

75.     Deny.

76.     Deny.

77.     Deny.

78.     With respect to the allegations of Paragraph 78, the referenced "assignment agreements" speak for themselves.  To the extent a response is deemed necessary, Defendants admit that the "assignment agreements" say what they say.  As to the remainder, denied.

79.     Deny.

80.     Deny.

81.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 81, and therefore deny them.

82.     Deny.

## **COUNT III**

83.     Defendants repeat and incorporate each prior answer as if fully set forth herein, except to the extent they are inconsistent herewith.

84.     With respect to the allegations of Paragraph 84, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.

85.     With respect to the allegations of Paragraph 85, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.

86.     With respect to the allegations of Paragraph 86, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.  The allegations in Paragraph 86 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

87.     Deny.  The allegations in Paragraph 87 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

88.     Deny.  The allegations in Paragraph 88 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

89.     Deny.  The allegations in Paragraph 89 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

90.     Deny.

91.     Deny.

## COUNT IV

92.     Defendants repeat and incorporate each prior answer as if fully set forth herein, except to the extent they are inconsistent herewith.

93.     Deny.

94.     With respect to the allegations of Paragraph 94, the referenced Assignment Agreement speaks for itself.  To the extent a response is deemed necessary, Defendants admit that the Assignment Agreement says what it says.  As to the remainder, denied.

95.     With respect to the allegations of Paragraph 95, the referenced Employee Handbook and "tiag bids and proposal documents" speaks for themselves.  To the extent a response is deemed necessary, Defendants admit that these documents say what they say.  As to the remainder, denied.

96.     With respect to the allegations of Paragraph 96, the referenced Assignment Agreement and "tiag bids and proposal documents" speaks for themselves.  To the extent a response is deemed necessary, Defendants admit that these documents say what they say.  As to the remainder, denied.

97.     Deny.  The allegations in Paragraph 97 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

98.     Deny.  The allegations in Paragraph 98 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

99.     Deny.  The allegations in Paragraph 99 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

100.    Deny.  The allegations in Paragraph 100 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

101.    Deny.

102.    Deny.  The allegations in Paragraph 102 are further denied to the extent that they purport to assert claims with regard to the '553 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

103.    Paragraph 103 states conclusions of law to which no response is required.  To the extent an answer is required, the allegations in Paragraph 103 are denied.

## COUNT V

104.    Defendants repeat and incorporate each prior answer as if fully set forth herein, except to the extent they are inconsistent herewith.

105.    Paragraph 105 states conclusions of law to which no response is required.  To the extent an answer is required, the allegations in Paragraph 105 are denied.

106.    Deny.  The allegations in Paragraph 106 are further denied to the extent that they purport to assert claims against KEYnetik, or with regard to the '553 Patent, the '146 Patent, the '669 Patent Application, the '949 Patent Application, and the formation of KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

107.    Deny.

108.    Deny.

## COUNT VI

109.    Defendants repeat and incorporate each prior answer as if fully set forth herein, except to the extent they are inconsistent herewith.

110.    Paragraph 110 states conclusions of law to which no response is required.  To the extent an answer is required, the allegations in Paragraph 110 are denied.

111.    Deny.  The allegations in Paragraph 111 are further denied to the extent that they purport to assert claims with regard to the '553 Patent and the '146 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

112.    Deny.

113.    Deny.

114.    Deny.  The allegations in Paragraph 114 are further denied to the extent that they purport to assert claims with regard to the '553 Patent and the '146 Patent, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

115.    Deny.

116.    Deny.  The allegations in Paragraph 116 are further denied to the extent that they purport to assert claims against KEYnetik, which claims were dismissed by the Court's Order of December 27, 2011 (Doc. 34).

117.    Deny.

118.    Deny.

## PRAYER FOR RELIEF

119.    Deny that tiag is entitled to any relief, including but not limited to the relief sought in the Prayer for Relief.

120.    All other factual allegations in the Amended Complaint that are not specifically admitted above in Paragraphs 1-119 are denied, and the Court should enter judgment on all of tiag's claims in favor of Defendants, dismiss the case with prejudice, award Defendants their costs, including reasonable attorneys' fees, incurred in defending this action, and grant such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Defendants, while reserving the right to assert other defenses as discovery proceeds, and without assuming the burden of proof when the burden of proof rests on Plaintiff, assert the following separate and independent affirmative defenses in further opposition to Plaintiff's Amended Complaint:

## FIRST AFFIRMATIVE DEFENSE

121.    The claims set forth in the Amended Complaint are barred, in whole or in part, for failure to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

122.    The claims set forth in the Amended Complaint are barred, in whole or in part, by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

123.    The claims set forth in the Amended Complaint are barred, in whole or in part, by laches.

## FOURTH AFFIRMATIVE DEFENSE

124.    The claims set forth in the Amended Complaint are barred, in whole or in part, by tiag's unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

125.   The claims set forth in the Amended Complaint are barred, in whole or in part, by the doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

126.   The claims set forth in the Amended Complaint are barred, in whole or in part, by the doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

127.   The claims set forth in the Amended Complaint are barred by fraud.

## EIGHTH AFFIRMATIVE DEFENSE

128.   The claims set forth in the Amended Complaint are barred by the lack of damages.

## NINTH AFFIRMATIVE DEFENSE

129.   Plaintiff's claim is barred, in whole or in part, by the language of the Assignment Agreement, including, but not limited to, section 2(c).

## TENTH AFFIRMATIVE DEFENSE

130.   Plaintiff failed to mitigate any damages Plaintiff claims to have suffered.

## COUNTERCLAIMS OF MARK B. SHKOLNIKOV AND KEYNETIK, INC.

## NATURE OF THE ACTION

1.   Counter-Defendant tiag's underlying lawsuit against Mr. Shkolnikov and KEYnetik, Inc. is nothing more than an opportunistic attempt to steal the technology developments of Mr. Shkolnikov, and to cause significant damage to Mr. Shkolnikov and KEYnetik in the process.  It also represents a material breach of the parties' agreement.

2.      As the documents attached to the Amended Complaint and to these Counterclaims show, tiag promised from the beginning of Mr. Shkolnikov's employment at tiag that tiag would "never claim any rights to own or otherwise control" any of his developments, whether they were developed prior to his employment by tiag, were related to such prior developments, or were otherwise developed outside of his employment responsibilities for tiag.

3.      Tiag acted in accordance with these contractual obligations to Mr. Shkolnikov during his employment by tiag, repeatedly acknowledging his ownership over his prior and ongoing developments—with tiag's principals, such as Mr. Goeringer, even entertaining the possibility of investing in KEYnetik and its technologies and looking for ways for tiag and KEYnetik to work jointly on projects.

4.      Far from concealing his work for and through KEYnetik, Mr. Shkolnikov used a KEYnetik email address in communications, shared information with tiag about KEYnetik's developments, and even sought input from tiag's owners on how to best market KEYnetik's technology and expertise to customers.

5.      Upon the termination of Mr. Shkolnikov's employment with tiag, tiag embarked on a strategy to steal Mr. Shkolnikov's technological developments through the underlying lawsuit, which contains numerous obvious and demonstrably false statements, including the repeated assertions that tiag was unaware of Mr. Shkolnikov's formation of and work through KEYnetik or of Mr. Shkolnikov's patent activity for himself and KEYnetik.  All of these attempts to claim ownership over Mr. Shkolnikov's developments are in breach of tiag's obligations under the Assignment Agreement.  These breaches have caused Mr. Shkolnikov damages for which tiag is liable.

17

**THE PARTIES**

6.      Counter-Plaintiff Mark B. Shkolnikov is a Virginia resident residing at 2883 Franklin Oaks Drive, Herndon, Virginia 20171.

7.      Counter-Plaintiff KEYnetik, Inc. is a corporation organized and existing under the laws of the Commonwealth of Virginia.  KEYnetik's principal place of business is located at 2883 Franklin Oaks Drive, Herndon, Virginia 20171.

8.      Counter-Defendant tiag is a corporation organized and existing under the laws of the Commonwealth of Virginia.  Tiag has its headquarters and principal place of business at 1760 Reston Parkway, Suite 510, Reston, Virginia 20190.

**JURISDICTION AND VENUE**

9.      This Court has supplemental jurisdiction over these Counterclaims under 28 U.S.C. § 1367(a) because the state-law claim arises out of the same operative facts as tiag's federal claim and state-law claims over which the Court has exercised supplemental jurisdiction.

10.      This Court has personal jurisdiction over tiag by virtue of its organization and existence under the laws of the Commonwealth of Virginia, and/or by virtue of tiag's transacting business in the Commonwealth of Virginia.

11.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

**FACTS**

12.      Counter-Plaintiff Mr. Shkolnikov worked for tiag from March 1, 2002 until March 17, 2010.  Initially, Mr. Shkolnikov worked as an independent contractor pursuant to a Letter Contract.  On May 1, 2003, Mr. Shkolnikov became a tiag employee, pursuant to an Employment Agreement, which supersedes the Letter Contract.  At that time, he also executed an Assignment of Inventions, Non-Disclosure, and Non-Competition Agreement ("Assignment

Agreement"), a copy of which was attached as Exhibit 3 to the Amended Complaint.

13.     Section 2(a) of the Assignment Agreement provides,

If at any time during his/her employment, Employee shall (alone or with others) make, conceive, create, discover, invent or reduce to practice any invention, modification, discovery, design, development, improvement, process, software program, work of authorship, documentation, formula, data, technique, know-how, trade secret, or intellectual property right whatsoever or any interest therein (whether or not patentable or registrable under patent, copyright, trademark or similar statute or subject to similar protection (herein called "***Developments***") that (i) relates to the Company's business, or that relates to the business of customers or suppliers of the Company and to activities undertaken by the Company on behalf of such customers or suppliers, or relates to any products or services being developed, manufactured or sold by the Company, (ii) results from tasks assigned to Employee by the Company or (iii) results from the use of premises, equipment or property (tangible or intangible) owned, leased, or contracted for by the Company ("***Company Developments***"), such Company Developments and the benefits thereof are and shall immediately become the sole and exclusive property of the Company and its assigns, as works made for hire. Employee shall promptly disclose to the Company each such Company Development, and take all steps necessary to ensure the Company's ownership of such Company Developments.

14.     However, section 2(c) of the Assignment Agreement contains the following important qualification to section 2(a):

*Notwithstanding any other provision* of this Agreement, (i) the Company and the Employee acknowledge that the Employee, prior to his employment with the Company, has created Developments and may, during and after the period of time that he is employed with the Company, create additional Developments and (ii) the Company and Employee agree that Developments created by the Employee will only be deemed to be Company Developments which are subject to the requirements of this Agreement *if such Developments are created by the Employee in the course of the performance of his services as an employee* of the Company.  In addition, (iii) the Company explicitly guarantee [sic] that *it will never claim any rights* to own or otherwise control, use, rely upon, sub-license or exploit in any form any of the Employee Developments (A) *done before the Company and the Employee entered into this agreement*, (B) any Employee Developments *subsequent or otherwise related to these existing Developments*, and (C) any other Employee Developments *conceived and created outside of the scope of his services as an employee* of the Company.

(*Id.* (emphases added).)

15.     On July 22, 2004, Mr. Shkolnikov, while an employee of tiag, filed a patent

19

application, which, on February 21, 2006, issued as U.S. Patent No. 7,002,553 ("'553 Patent"), entitled, "Active Keyboard System for Handheld Electronic Devices."  Mr. Shkolnikov was the sole inventor of the '553 Patent, which therefore names Mr. Shkolnikov as the sole inventor. The '553 Patent is a "[c]ontinuation-in-part of application No. 10/320,529, filed on Dec. 17, 2002, now Pat. No. 6,947,028" ("'028 Patent"), entitled, "Active Keyboard for Handheld Electronic Gadgets."

16.     Thus, the '553 Patent is based on and related to a patent applied for by Mr. Shkolnikov before he became an employee of tiag and the Assignment Agreement took effect.

17.     The '553 Patent also related to "[p]rovisional application No. 60/342,382, filed on Dec. 27, 2001" — prior to when Mr. Shkolnikov began his association with tiag.

18.     The '553 Patent is subject to a terminal disclaimer, indicating that it is a variation of Mr. Shkolnikov's '028 Patent.  Pursuant to the terminal disclaimer, the '553 and '028 Patents must share common ownership.

19.     Despite the undisputed facts connecting the '553 Patent to the earlier '028 Patent (which technology tiag concedes is owned wholly by Mr. Shkolnikov), and tiag's promise—as set forth in Section 2(c) of the Assignment Agreement—that it would "never claim any rights to own or otherwise control" any of Mr. Shkolnikov's developments, tiag has asserted in the underlying Amended Complaint that it owns all of Mr. Shkolnikov's developments.

20.     Specifically, tiag "explicitly guarantee[d] that *it will never claim any rights* to own or otherwise control, use, rely upon, sub-license or exploit in any form any of the Employee Developments (A) *done before the Company and the Employee entered into this agreement*, (B) any Employee Developments *subsequent or otherwise related to these existing Developments*, and (C) any other Employee Developments *conceived and created outside of the*

*scope of his services as an employee* of the Company."  (Emphases added.)

21.    On November 15, 2005, with tiag's full knowledge and consent, Mr. Shkolnikov formed KEYnetik, Inc. as a corporation organized under the laws of the Commonwealth of Virginia.

22.    Tiag was fully aware that Mr. Shkolnikov continued to work on his own independent developments, that he was pursuing patent applications in connection with such work, and that all of this was consistent with his rights under section 2(c) of the Assignment Agreement.

23.    On April 11, 2008, Mr. Shkolnikov filed patent application 12/101,578, entitled, "Force Sensing Apparatus and Method to Determine the Radius of Rotation of a Moving Object."  It relates to provisional applications filed on April 13, 2007 and February 8, 2008, was published on October 16, 2008, and names Mr. Shkolnikov as the inventor, as he was the sole inventor.  On June 21, 2011, this application issued as U.S. Patent No. 7,966,146, identifying KEYnetik as assignee.

24.    On January 5, 2009, Mr. Shkolnikov filed patent application 12/348,698 for his invention, entitled, "Split Qwerty Keyboard with Reduced Number of Keys."  The application relates to a provisional application filed on January 7, 2008, was published on July 9, 2009, and names Mr. Shkolnikov as the inventor, as he was the sole inventor of this invention, and KEYnetik as assignee.

25.    On July 6, 2009, Mr. Shkolnikov filed patent application 12/498,111 for his invention along with Yevgeniy Shkolnikov, entitled, "Spatially Aware Inference Logic."  The application names Mr. Shkolnikov and Yevgeniy Shkolnikov as inventors, as they were co-inventors of this invention.   This application lists KEYnetik as assignee, and relates to

provisional applications filed on July 7, 2008 and November 12, 2008.

26.    On July 10, 2009, Mr. Shkolnikov filed patent application 12/500,640 for his invention, entitled, "Handheld Electronic Apparatus with Multiple Input Devices."   The application was published on January 14, 2010, and names Mr. Shkolnikov as inventor, as he was the sole inventor of this invention, and KEYnetik as assignee.   It relates to a provisional application filed on July 11, 2008.   (The '553 Patent, the '146 Patent identified in Paragraph 23, and the patent applications identified in Paragraphs 24-26 are collectively referred to herein as the "Patents and Patent Applications.")

27.    Throughout this period of time, tiag knew of Mr. Shkolnikov's developments and inventions, and that he was pursuing them through and for the benefit of KEYnetik and/or himself.   Mr. Shkolnikov's email address, which he routinely used for communications with Mr. Goeringer and others at tiag regarding these matters, displayed the "keynetik.com" domain.

28.    Tiag knew of Mr. Shkolnikov's and/or KEYnetik's ownership interest in the Patents and Patent Applications that tiag references in its Amended Complaint.   At numerous times during Mr. Shkolnikov's employment by tiag, tiag and its principals, including Mr. Goeringer, expressed interest in investing in KEYnetik, and/or jointly marketing KEYnetik's technologies.

29.    For example, on November 18, 2007, Mr. Shkolnikov provided Mr. Goeringer with a copy of a KEYnetik presentation that Mr. Goeringer requested for the purpose of pursuing jointly (*i.e.*, tiag and KEYnetik) a potential customer.   *See* Exhibit A, attached hereto.   At other times during Mr. Shkolnikov's employment with tiag, Mr. Goeringer acknowledged Mr. Shkolnikov's work and developments through and for KEYnetik—indeed, as far back as 2004, in a meeting with a Mr. Seong K. Mun of Georgetown University regarding a potential contact

for business in Korea.

30.     Although Mr. Shkolnikov openly discussed with tiag personnel what he was doing with KEYnetik, until the underlying suit was initiated by tiag, tiag never contested KEYnetik's or Mr. Shkolnikov's ownership over the Patents and Patent Applications or asserted that such technology was owned by tiag.  *See*, *e.g.*, Exhibit B, attached hereto.

31.     In the Amended Complaint, tiag asserts ownership over developments described in a document entitled, "Freehand: Data Entry and Screen Navigation Solution for Cell Phones, Personal Digital Assistants, Pages, MP3 Players, Toys, GPS Receivers, e-Books, Remote Controls, Calculators, Cameras, Multimeters and Other Handheld Gadgets" (the "Freehand Presentation").   A copy of the Freehand Presentation presented to tiag senior personnel in October 2003 is attached as Exhibit C.

32.     The Freehand Presentation explicitly states on its face, "Copyright © 2001, 2002, 2003 by Mark Shkolnikov."  Thus, the Freehand Presentation describes intellectual property that Mr. Shkolnikov developed *before* his tiag employment and/or related to such intellectual property, establishing such technology as "Employee Developments" pursuant to § 2(c) of the Assignment Agreement.

33.     The Freehand Presentation also demonstrates that tiag understood that Mr. Shkolnikov had been pursing patents since at least 2003 (when Mr. Goeringer received a copy of the Freehand Presentation from Mr. Shkolnikov), since the copyrighted Freehand Presentation is plainly marked, "Patent Pending."  Tiag admits that the technology in the Freehand Presentation, of which it was aware, was later incorporated into the '553 Patent.

34.     At the time in 2003 and thereafter, tiag voiced no objection to Mr. Shkolnikov's claim of copyright ownership over the Freehand Presentation, or that aspects of the presentation

were included in the '553 Patent because it knew that these Developments belonged to Mr. Shkolnikov, not tiag, in accordance with the Assignment Agreement.

35.     On March 17, 2010, Mr. Shkolnikov's employment with tiag terminated.

36.     On July 8, 2011, tiag filed the underlying Complaint against Mr. Shkolnikov and KEYnetik, asserting ownership over the developments encompassed by the '553 Patent and the patent applications filed by Mr. Shkolnikov.  Tiag's Complaint alleged claims for breach of contract (Count I), correction of inventorship as to the '553 Patent, pursuant to 35 U.S.C. § 256 (Count II), conversion (Count III), misappropriation of trade secrets (Count IV), breach of fiduciary duty (Count V), and fraud (Count VI).[1]

37.     On October 11, 2011, the Court dismissed the Complaint pursuant to Federal Rule 12(b)(1) because the Court found that tiag did not have standing to pursue its only federal claim. (Doc. 16.)   The Court's accompanying Order gave tiag until October 21, 2011 to file an Amended Complaint.  (Doc. 18.)

38.     On October 21, 2011, tiag filed an Amended Complaint (Doc. 19), which Mr. Shkolnikov and KEYnetik moved to dismiss on October 31, 2011 (Doc. 23).

39.     On December 27, 2011, the Court granted the motion to dismiss in part, dismissing all of tiag's claims with regard to the '553 Patent and dismissing the claims against KEYnetik in Counts I-II and Counts V-VI, and dismissing portions of several of tiag's other claims on statute of limitations grounds.

<u>**COUNT I—BY MARK SHKOLNIKOV**</u>
**(Breach of Contract)**

40.     Mr. Shkolnikov incorporates the allegations contained in Paragraphs 1 through 39 above as if fully set forth herein.

---

[1] The Complaint mislabeled the fraud count as a second "Count V."

41.     The Assignment Agreement is a valid, binding contract between tiag and Mr. Shkolnikov.

42.     Mr. Shkolnikov has fully performed his obligations under the Assignment Agreement and has not breached the Assignment Agreement.

43.     Pursuant to Section 2(c) of the Assignment Agreement, tiag "explicitly guarantee[d] that *it will never claim any rights* to own or otherwise control, use, rely upon, sub-license or exploit in any form any of the Employee Developments (A) *done before the Company and the Employee entered into this agreement*, (B) any Employee Developments *subsequent or otherwise related to these existing Developments*, and (C) any other Employee Developments *conceived and created outside of the scope of his services as an employee* of the Company." (Emphases added).

44.     All of the Patents and Patent Applications identified by tiag in the Amended Complaint as well as the technology described in the Freehand Presentation and other presentations referenced by tiag in its Amended Complaint are, under the terms of the Assignment Agreement, Developments of Mr. Shkolnikov.

45.     Tiag, through its Managing Director, Mr. Goeringer, and other tiag personnel, knew that Mr. Shkolnikov was pursuing the Patents and Patent Applications and knew that these Patents and Patent Applications, as well as the Freehand Presentation, involved Developments belonging solely to Mr. Shkolnikov.

46.     Notwithstanding tiag's knowledge that the Patents and Patent Applications were Developments belonging to Mr. Shkolnikov, tiag has claimed that the Patents and Patent Applications and related developments, including the Freehand Presentation, all belong to tiag.

47.     Tiag's claim of ownership over the Patents and Patent Applications and related Developments, such as the Freehand Presentation, is a material breach of tiag's obligations under the Assignment Agreement.  Tiag's use of other technology belonging to Mr. Shkolnikov likewise constitutes breaches of the Assignment Agreement or other obligations of tiag.

48.     On information and belief, tiag has breached the Assignment Agreement and Employment Agreement in other respects as well.

49.     Tiag's breach of the Assignment Agreement has directly caused Mr. Shkolnikov damage, through the significant cost of defending against the underlying lawsuit, through Mr. Shkolnikov's inability to engage in any transactions relating to his developments while the lawsuit is pending, as well as other damages.

## COUNT II—BY MARK SHKOLNIKOV & KEYNETIK, INC.
### (Declaratory Judgment)

50.     Mr. Shkolnikov incorporates the allegations contained in Paragraphs 1 through 49 above as if fully set forth herein.

51.     All of the Patents and Patent Applications identified by tiag in the Amended Complaint as well as the technology described in the Freehand Presentation are developments of Mr. Shkolnikov.

52.     U.S. Patent No. 7,966,146 and patent applications 12/348,698, 12/498,111, and 12/500,640 were all assigned by Mr. Shkolnikov to KEYnetik.

53.     Tiag has wrongfully claimed ownership in the Patents and Patent Applications, as well as the developments described in the Freehand Presentation, all of which belong to Mr. Shkolnikov and/or KEYnetik, and has brought the underlying lawsuit against Mr. Shkolnikov and KEYnetik to effect its wrongful claim.

54.     An actual, present and justiciable controversy has arisen between tiag on the one hand and Mr. Shkolnikov and KEYnetik on the other regarding the ownership of the Patents and Patent Applications, as well as the developments described in the Freehand Presentation.

55.     Pursuant to 28 U.S.C § 2201, Mr. Shkolnikov and KEYnetik seek declaratory judgment from this Court to confirm their ownership of the patents and patent applications, the developments described in the Freehand Presentation, and any other developments belonging to Mr. Shkolnikov and/or KEYnetik over which tiag is claiming ownership.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Counter-Plaintiffs Mark B. Shkolnikov and KEYnetik, Inc. respectfully request relief against Counter-Defendant tiag as follows:

A.  Damages, in an amount to be determined at trial, for tiag's breach of contract;

B.  A judgment that tiag has breached the Assignment Agreement;

C.  A declaration that the entire right, title and interest in and to United States Patent Nos. 7,002,553 and 7,966,146 and Patent Application Nos. 12/348,698, 12/498,111, and 12/500,640, and all related foreign patent filings are the sole property of Mr. Shkolnikov and/or KEYnetik;

D.  A declaration that the entire right, title and interest in and to the technologies and developments described in the Freehand Presentation are the sole property of Mr. Shkolnikov and/or KEYnetik;

E.  An award of costs, including reasonable attorneys' fees, associated with this action, as well as prejudgment interest; and

F.  Such further and other relief as the Court may deem just and appropriate.

## JURY DEMAND

Mr. Shkolnikov and KEYnetik hereby demand a trial by jury on all issues so triable.


January 6, 2012                          Respectfully submitted,

                                         /s/Christine P. Hsu
                                         Christine P. Hsu (Va. Bar No. 80496)
                                         David S. Wachen (admitted *pro hac vice*)
                                         SHULMAN, ROGERS, GANDAL,
                                           PORDY & ECKER, P.A.
                                         12505 Park Potomac Ave, 6th Fl.
                                         Potomac, MD  20854
                                         (301) 230-5200
                                         Fax (301) 230-2891
                                         thsu@shulmanrogers.com
                                         dwachen@shulmanrogers.com

                                         *Counsel for Defendants Mark B. Shkolnikov and
                                         KEYnetik, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 6th day of January 2012, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and served on all counsel of record using the CM/ECF system.

/s/Christine P. Hsu
Christine P. Hsu (Va. Bar No. 80496)
SHULMAN, ROGERS, GANDAL,
  PORDY & ECKER, P.A.
12505 Park Potomac Ave, 6th Fl.
Potomac, MD  20854
(301) 230-5200
Fax (301) 230-2891
thsu@shulmanrogers.com

*Counsel for Defendants Mark B. Shkolnikov and KEYnetik, Inc.*